## S. S. HOUSTON ET AL. *v.* M. S. SMYTHE.

1. LANDLORD AND TENANT. *Creation of tenancy. Attachment for rent.*

   The owner of land subject to a past due trust-deed to one Smythe, bargained the land to another, taking as payment two notes, one of which was in form a rent obligation for the ensuing year, payable to such owner or bearer. Title was to be made on payment of both notes, but in default of payment the lessor or any assignee or holder of the rent note could terminate the lease without notice to quit. It was further agreed that the notes when executed should be delivered to Smythe in payment of the trust-deed. This being done, and the rent note being unpaid, Smythe sued out an attachment for rent, and levied on certain products of the land for that year. *Held*, that Smythe was not a mere assignee of the note, but is to be deemed the real lessor, and, therefore, entitled to attach for rent.

2. SUPREME COURT. *Practice. Immaterial errors.*

   This court will not reverse a judgment for errors in the rulings on pleadings, where the whole case has been developed by evidence, and it is manifest that a different result could not be reached.

3. PLEADING. *Evidence to contradict, when incompetent.*

   The pleadings on both sides agree in stating the value of property in replevin at a certain sum, evidence on either side to prove a greater value is incompetent.

APPEAL from the circuit court of Leake county.

HON. A. G. MAYERS, Judge.

This was attachment for rent, and replevin by the tenant. The facts upon which the decision of the main question rests are stated in the opinion of the court. Both the declaration and avowry stated the value of the property to be as fixed by the return of the officer. On the trial, a witness for the defendant was permitted to testify to a greater value, and this being the only evidence introduced on that point, the court, over the objection of plaintiff, instructed the jury to assess the property at the valuation given by the witness, which was accordingly done by the jury, and judgment was entered for the defendant in replevin, sustaining the attachment for rent.

*F. B. Pratt*, for appellant.

The evidence fully established the fact that there was a lease

executed between Samuel Houston and S. S. Houston of the same date as the note which Mrs. Smythe held, and that said lease was never assigned. It was fully established, and no attempt was made to controvert it, that Mrs. Smythe was simply the assignee of the rent debt, and the verdict should, therefore, have been in favor of the plaintiff in replevin in accordance with the doctrine laid down in *Gross* v. *Bartley*, decided at this term, *ante*, p. 116.

*D. C. Beauchamp*, on same side.

The assignee of a rent note, or rent debt, cannot distrain, unless there is also an assignment of the lease or of the lands, or reversion thereof. Code, §§ 1302, 1324 ; *Patty* v. *Bogle*, 59 Miss. 493. As the statute expressly confers the right of distress on a certain class, all others are excluded. Privity of estate is essential to support distress. Taylor, Land. and Ten., § 868.

The verdict is far more than the value fixed by both the plaintiff and defendant. This is clearly erroneous, for where both sides by their pleadings agree upon a certain valuation, this should control, and evidence to prove a different value is incompetent.

*Calhoon & Green*, for appellee.

The question here is, whether the assignee of the rent note in question can maintain attachment for rent against the agricultural products raised on the demised premises during the year for which the rent is due. Is the remedy by attachment, § 1302, code 1880, restricted to the lessor as a *personal privilege ?* If this is restricted under this section, do not holders of the debt for rent secured by the lien, whether landlords or not, have the remedy by attachment to collect the debt? These questions involve a consideration of the nature of distress at common law and under our statutes.

At common law, distress being without the intervention of any court, was necessarily a personal privilege, and was necessarily in the name of the landlord. 2 Taylor L. & T., §§ 557, 567 ; *Patty* v. *Bogle*, 59 Miss. 492.

The remedy by distress was abolished in this state by statute in 1882. Hutch. Code 808. In 1822 a statute was passed similar in substance to § 1302, code 1880 (Hutch. Code 808), entitled " an act for the better securing the payment of rents, and preventing the

fraudulent practices of tenants, and to regulate the practice of suing out and prosecuting actions of replevin." It will be seen that this statute, and those subsequently passed, and our present statute, do not proceed upon the relation of the landlord and tenant to secure the right, but upon the *fact of indebtedness* for rent, and gives the remedy as an incident to the debt for rent, and merely specify lessors, because rent is ordinarily due to them.

The adjudications show that it was not a privilege but a suit. See *Cornell* v. *Rulon*, 3 How. (Miss.) 54 ; *Peck* v. *Critchlow*, 7 Ib. 247 ; *Tifft* v. *Verden*, 11 S. & M. 153 ; *Parker* v. *Stovall*, 31 Miss. 446 ; *Marye* v. *Dyche*, 42 Miss. 378. This last case virtually overrules *Wright* v. *Link*, 34 Miss. 266, and as this case has been succeeded by many others, and not referred to but passed by *sub silentio*, we can safely suppose it has had no effect upon the jurisprudence of this state in regard to rent.

In *Briscoe* v. *McElween*, 43 Miss. 565, substantially the same doctrine is announced as in *Marye* v. *Dyche, supra.*

Counsel cited and examined at length, besides the foregoing cases, *Bloodworth* v. *Stevens*, 51 Miss. 480 ; *Tucker* v. *Whitehead*, 58 Ib. 765 ; *Arbuckle* v. *Nelms*, 50 Ib. 556 ; *McRovie* v. *White*, 52 Ib. 408 ; *Maxey* v. *White*, 53 Ib. 80 ; *Patty* v. *Bogle*, 59 Ib. 492 ; *Fitzgerald* v. *Fowlkes*, 60 Ib. 276, and contended that they were incompatible with *Wright* v. *Link, supra.*

The present statute uses language showing that the remedy is not restricted to "lessors." See § 1311. " In arrear to the party causing such distress to be made," and " against the party in whose name or right such distress was taken." Similar language is used in §§ 1314 and 1316. Section 1326 gives the remedy to the " executors and administrators of any person unto whom any rent is or shall be due." Section 1342 provides for the tenant's giving security " to the person entitled to such rent."

A receiver may distrain. Wood L. & T. 32 and 33. Such right is derivative, and why not any other assignee distrain ?

It has been held that a vendor, within the meaning of the vendor's lien, is the real vendor, not necessarily the grantor ; so there can be a real lessor who is not the ostensible lessor. As Mrs.

Smythe, in this case, held a past due trust-deed on the land, and the arrangement and agreement by which she took the note was consented to by all the parties, she was the *real* lessor, although Samuel Houston was the ostensible lessor.

CAMPBELL, J., delivered the opinion of the court.

The facts testified to by the Messrs. Houston are that Samuel Houston was indebted a considerable sum of money to Mrs. Smythe, which was secured by a deed of trust on land owned by him, and he determined to sell his land in different parcels, severally to his two sons and his son-in-law, and to get Mrs. Smythe to take the notes they would give for the purchase price of the land, in payment of the debt to her.

Mrs. S. was applied to, and signified her willingness to take the notes of the purchasers of the land, to be drawn up by her attorney, Mr. Eads, after the manner of some he had prepared in a transaction she had with Mr. Wallace, and the Messrs. Houston were so informed, and referred by her to Mr. Eads. Thus referred, they applied to Mr. Eads, who promised to prepare the papers, and, subsequently did so, and handed them to Mrs. Smythe, who took them to the residence of Mr. Houston to be executed. These papers consisted (so far as involved in this case) of a writing by which Samuel Houston (the owner of the land and debtor of Mrs. S.) agreed to lease a certain quarter section of his land to S. S. Houston, for the year 1887, for the sum of two hundred and fifteen dollars and sixty-two and a half cents, to be paid as rent on the 1st day of November, 1887, and, if the rent note should be paid when due or soon thereafter, and another note for the sum of two hundred and forty-seven dollars and ninety-seven cents, due 1st November, 1888, should be paid, in like manner, the title of the quarter section was to be conveyed by Samuel Houston to S. S. Houston.

This writing contains the further provision that, if the rent note and the other should not be promptly paid, Samuel Houston or the assignee and holder of the note should have the right to declare the lease and sale void and at an end, and no notice to quit should

be necessary. This writing was duly executed by Samuel Houston and his wife.

A note for two hundred and fifteen dollars and sixty-two and a half cents, payable 1st November, 1887, for the rent of the land, and one for two hundred and forty-seven dollars and ninety-seven cents, payable 1st November, 1888, to Samuel Houston or bearer, corresponding to the description of them in the writing executed by Samuel Houston and wife, were duly executed by S. S. Houston, and they were indorsed by Samuel Houston and delivered to Mrs. Smythe, who received them for the debt of Samuel Houston, as before agreed to be done. The quarter section of land mentioned in the writings was occupied by S. S. Houston, in pursuance of the arrangement, during 1887, and the rent note mentioned not being paid when due, Mrs. Smythe sued out an attachment for rent, and caused to be seized under it certain agricultural products of the land that year, and S. S. Houston replevied them. Samuel Houston agreed to sell, and S. S. Houston to buy the quarter section of land at the price of three hundred and seventy-five dollars, to be paid in equal sums at one and two years. Mrs. Smythe, who was to receive the notes S. S. Houston was to give for the land, desired the first payment to be a "rent note," and in the hands of her attorney the written stipulations of the parties took the form of a lease for the year 1887, and a contract of sale, if the two notes should be paid. S. S. Houston understood the matter and assented to this form of the transaction and subscribed and delivered the notes, which he knew were to go into the hands of Mrs. Smythe for the debt of Samuel Houston. This debt was long past due, and the deed of trust on the land subject to foreclosure. The arrangement made with S. S. Houston as to part of the land embraced by the deed of trust was by the joint act of mortgagor and mortgagee. The form of the transaction was a contract of lease and sale by Samuel Houston, mortgagor, and a rent note and a purchase note by S. S. Houston, payable to Samuel Houston, or bearer. In fact, the mortgagee, Mrs. Smythe, who might have caused the land to be sold under the deed of trust, procured the lease and contract of sale by virtue of which the occupancy of the

land for 1887 was secured to S. S. Houston with the ulterior rights of a purchaser, and while the notes were made payable to Samuel Houston, they were also to "bearer," and were intended beforehand to go into the hands of Mrs. Smythe, in pursuance of the scheme out of which they arose.

In this state of facts the real lessor of S. S. Houston was Mrs. Smythe, and she was entitled to an attachment for rent. She is not the mere assignee of a chose in action without privity of estate in the land, but was mistress of the situation, with a deed of trust on the land whereby she could have it sold, and instead of doing this entered into an arrangement whereby, acting through Samuel Houston, she let the quarter section of land to S. S. H. for 1887, with ulterior right as purchaser. It matters not that S. S. Houston and his father, Samuel Houston, had agreed on a purchase and sale of the land, and that nothing was said about rent until afterward. All that preceded was merged in the written contract. That fixed the position and rights of the parties. It was admissible for the parties to create the relation of landlord and tenant, as they did. The purpose of it is obvious, and after expressly creating this relation for purposes of their own, it is not allowable afterward to recede from it or complain of its legal consequences.

The validity of the attachment for rent and the taking of the goods by virtue of it were indisputable as a legal proposition on the evidence of the plaintiff, S. S. Houston, and no other result than a verdict for the defendant could be upheld by the court.

The court erred in sustaining the demurrers, but the whole case was fully developed by evidence, and any other result than defeat to the plaintiff in replevin would not be tolerated. In such case it would be wrong to keep alive the controversy which, as under the law, it can have but one end, had better be at once terminated. Therefore, following numerous precedents, we will not inflict upon the party who must utimately lose the cost of further and useless litigations by remanding the case because of error in rulings on the pleadings, since it is manifest that no harm was done by these rulings.

But the circuit judge erred in directing the jury to fix the value of the articles seized under the attachment at a sum different from that stated in the pleadings of both parties, and for this error *the judgment will be reversed and the proper judgment will be entered here.*